JULIUS A. HAYDEN, APPELLANT, VS. BARTON H. THRASHER ET AL., APPELLEES.

1. Where a surety becomes liable by signing at the request of a co-surety, who agrees to indemnify and save him harmless, he may, after the money becomes due, maintain a bill in equity to compel the co-surety to pay the debt and save him harmless, not only as to money he has paid, but also as to whatever he is liable to pay on account of being such surety.

2. In such case, where fraudulent conduct on the part of the co-surety who ought to pay the debt is shown, not only in the inception of the liability, but in the disposition of his property, a writ of injunction and such other process as may be necessary may be prayed in the first instance to prevent fraudulent transfers, and to hold property and assets to the relief of the surety entitled to protection, and it is not necessary to obtain judgment at law against the co-surety before filing such bill.

3. A bill in the nature of a creditor's bill is not multifarious because it prays discovery and relief against several who are not united in interest, and who may be strangers to each other, as the object of the bill is to reach sundry assets of principal defendants in their several possession.

Appeal from the Circuit Court for Alachua county.

The appellant filed his bill in chancery in the Circuit Court of Marion county against the appellees, Barton H. Thrasher personally and as trustee for his wife, L. A. Thrasher, and her children, William A. Dickinson, Early W. Thrasher personally and as trustee for his wife and children, and George W. Means as trustee for Mattie S. Means and her children, charging as follows :

That on June 1st, 1875, Barton H. Thrasher solicited appellant to indorse for accommodation six promissory notes made by W. L. Thrasher, payable to his own order, indorsed by him and by his brothers, B. H. and A. M. Thrasher, amounting in the aggregate to $14,500, and stated to appellant that said W. L. Thrasher and B. H. and A. M. Thrasher were perfectly solvent, and would in-

demnify him against loss by conveying to him unincumbered real estate worth $30,000, and that said notes would be promptly paid at maturity. On the next day appellant went to the office of B. H. Thrasher in Atlanta, Ga., where he met B. H., A. M. and W. L. Thrasher, and relying upon the assurance of B. H. Thrasher, who is an attorney-at-law, as to the solvency of the parties and the title to the property offered as indemnity, indorsed said notes and took a conveyance of certain real estate situated in Fulton and Morgan counties, in the State of Georgia, as security in the event of the non-payment of said notes; that immediately thereafter B. H. Thrasher took those notes and got some of them discounted on the faith of appellant's indorsement, and he, his father, Early W. Thrasher, and his brothers, W. L. and A. M. Thrasher, left Georgia and removed to Florida, and with the money thus raised, and the notes thus indorsed by appellant, B. H. Thrasher bought the lands described in the bill and paid for them with said money and said notes, and had titles thereto made to B. H. Thrasher as trustee for his wife and children, Early W. Thrasher as trustee for his wife and children, and W. A. Dickinson, which real estate is the subject of this suit.

That at the maturity of the notes the maker and prior indorsers, W. L., B. H. and A. M. Thrasher, failed to pay them, and suits were brought thereon against appellants, and judgments rendered against him for $6,510.78, which amount he was compelled to pay; and that suits were then pending against him upon the other notes, and would soon go to judgment.

That at the time that appellant indorsed said notes W. L., B. H. and A. M. Thrasher were insolvent, though that fact was not known to appellant, as B. H. Thrasher had assured him that they were all solvent; that at that time there existed in Morgan county, Ga., a judgment against

Early W. Thrasher (their father) for a large sum of money, and that he had given a stay bond under the laws of Georgia with his three sons, W. L., B. H. and A. M. Thrasher, as securities thereon, which judgment and stay bond were a lien upon the property conveyed to appellant as indemnity against his indorsement, but of the existence of which the appellant was ignorant, the fact having been concealed from him by B. H. Thrasher, though known to him (Thrasher) at the time.

That subsequently a *fi. fa.* issued upon said judgment and was levied upon said property so conveyed to appellant, and, though the appellant filed a claim thereto, and his claim was tried in the Superior and Supreme Courts of Georgia, the property was found subject to the judgment and was sold to satisfy the same, and became lost to appellant.

The bill charges that E. W. Thrasher and his sons, W. L., B. H. and A. M. Thrasher, conspired to obtain appellant's indorsement of the said notes for the purpose of defrauding him by obtaining money on the faith of his credit, and investing the same in the manner charged in the bill so as to defeat him in reaching the same; that they had no credit, and no means of raising money, and could not have made the purchases except for the money thus raised; that the appellee, W. A. Dickinson, afterwards combined with E. W. and B. H. Thrasher to defraud appellant by consenting to take title to some of the property in his name, and by taking a pretended and fraudulent assignment of a pretended and fraudulent mortgage from B. H. Thrasher, trustee, to E. W. Thrasher, and of a contract between George W. Means as trustee and B. H. Thrasher as trustee.

The bill also charges that said B. H. and E. W. Thrasher and W. A. Dickinson are about to still further convey and incumber said property to innocent parties for the purpose

of preventing appellant from following the same, and that they are insolvent.

No fraud is charged againt G. W. Means, trustee, but he is made a party only because necessary to obtain the relief prayed.

The bill also charges that George W. Means agreed with B. H. Thrasher that if, at the expiration of three years, the said B. H. Thrasher so demanded, he, the said Means, would refund to the said Thrasher the sum of $5,000, part of said sum so paid by said Thrasher for the land described in said bill of complaint, with interest at 15 per cent. per annum, and take back part of the land, which agreement was in writing and contained a provision mortgaging other lands described in the bill as security for the faithful performance of said agreement.

That Thrasher, conspiring with said Dickinson to defraud appellant, assigned, for a pretended and fraudulent consideration, said contract to said W. A. Dickinson, and that said Dickinson is now seeking to collect said sum of money from Means.

The bill prays injunction to restrain Thrasher, Dickinson and others from selling or incumbering the securities and other property ; that complainant be subrogated to Thrasher's rights under the contract and mortgage made by Means, and that the property bought with the money obtained by the use and discount of said notes be sold and the proceeds applied to the payment of the amount paid out by complainant, and for which he is liable, &c.

It also prays general relief. An injunction was allowed.

To the bill a demurrer was filed. The Chancellor sustained the demurrer upon one ground only, viz : " That said bill fails to show that complainant has recovered a common law judgment against defendant, B. H. Thrasher,

as the law requires, and against the other indorsers of the note exhibited," and the Chancellor dismissed the bill.

From that decree an appeal was taken.

[Mem.: Early W. Thrasher, one of the defendants and appellees in this cause, died after the appeal was taken, and, by proper proceedings, after due publication of notice as required by the twenty-fifth rule of this court, William M. Knox, as administrator of his estate, was made a party defendant and appellee herein.]

The ground of appeal is that the Chancellor erred in sustaining the demurrer and dismissing the bill.

*S. D. McConnell* for Appellant.

I. The demurrer admits all the allegations to be true, but denies the jurisdiction of the Court of Chancery.

The most of the defendants are sued as trustees, and fraud is charged. The property in controversy is in equity held in trust for appellant.

" Equity always has jurisdiction where fraud is charged, or where a trust is involved." Oelrick vs. Spain, 15 Wall., 228.

" II. Though there may be a remedy at law, if it be not as ample as in equity, or if it will require a multiplicity of suits to enforce it, equity always has jurisdiction." 1 Story Eq., 32.

III. The Chancellor seems to have been controlled by the opinion of the court in Barrow vs. Bailey, 5 Fla., 9, but an examination of that case will show that the ruling in that case is not applicable to this case, but that the cases are entirely different. In the case cited there was no fraud charged in the contraction of the debt, neither was it charged that the property sought to be reached was the fruit of the fraud. It was a simple debt claimed to be due, and the property

sought to be reached was the property *bona fide* owned by the defendant, but charged to have been fraudulently conveyed by him to defeat the debt. It appeared upon hearing the case that the judgment relied upon by the complainant was void, and the court properly held that as he had no judgment, he could not attack the title of a third party to the property in dispute, there being no allegation of fraud, except as to the last conveyance of the property.

In this case the bill charges fraud in procuring the money which was invested in the particular property, and charges that all the parties, to-wit: the four Thrashers and Dickinson were parties to the fraud, and that all were cognizant of it. It also charges that this property was bought and paid for with the money thus raised by this fraud, and that the titles were so taken as set forth in the bill, in order to perfect and consummate the fraud against appellant, and it prays that the fruits of this fraud be restored to the appellant, who was thus defrauded.

In Ritch vs. Eichelberger, *et al.*, (13 Fla., 169,) no judgment had been obtained, neither had Ritch, who held a mortgage, established his debt by foreclosure of his mortgage. In addition to this his mortgage covered several pieces of property, only one of which had been sold, and it had not been shown by decree and sale that the other property was not sufficient to satisfy his demand ; yet as in his bill he charged fraud in the sale, and as the defendants demurred upon the ground (among others) that he had not established his debt by judgment, the court held that inasmuch as fraud was charged in the sale of the property and the demurrer admitted the charge to be true, the bill should be sustained.

Now in that case there was no fraud charged in the creation of the debt, but there was fraud only charged in the sale of the property. Yet though the debt had not been

established, and though the remaining property had not been exhausted, the court held that the bill should be sustained and the demurrer overruled.

This bill charges fraud in the creation of the debt; fraud in the purchase of the property; fraud in the manner of taking the title; fraud in the pretended mortgage on the same, and in the pretended assignment thereof; fraud in the pretended assignment of the contract with Means and fraud in the purpose to sell and assign to innocent purchasers. In fact the bill charges fraud from the beginning to the end of the whole transaction, and the demurrer admits the same to be true.

IV. The bill charges that all the parties, viz: B. H., A. M., W. L. and E. W. Thrasher, are insolvent.

The liability of B. H. Thrasher as one of the prior indorsers of the notes is not denied, and the demurrer admits his insolvency. That fact, together with the other allegations in the bill, shows that the powers of a court of law are inadequate to give relief, and that a suit at law would have been fruitless and unnecessary.

*Z. D. Harrison* on same side.

The principle of contribution among co-sureties, originally one for equity jurisdiction. Story's Eq. Jur., §§492, 493, and cases cited.

Although courts of law have been given jurisdiction of such cases, equity jurisdiction is not ousted. Ib., 495, 496; 20 Cal., 130.

If Hayden, as a co-surety, has discharged a common liability he could not at law obtain a judgment against any one of his co-sureties for more than his proportionate part, although other co-sureties be insolvent. In equity he can apportion the loss among his solvent co-sureties; and if the

loss has been occasioned by fraud he can make the perpetrator of the fraud bear the whole burden.

It is a familiar principle that a surety who has paid off the debt is entitled to the benefit of any securities taken by other sureties for indemnification. (Story's Eq. Jur., §499; 2 Fla., 598 ; 9 Fla., 23.) How much greater the reason and stronger the right in a case like this for the interposition of equity.

Here a surety by collusion with the principal discounts the common obligation for cash, with which he buys prop erty.. Equity will extend its hand beyond the limits of the law, seize the property so bought and hold it for the benefit of the surety who paid the debt. Story's Eq. Jur., 1,265.

The right to a lien on this property, or conveyance of it for benefit of Hayden, could not be asserted at law, but in equity it can be sustained under the equitable principle of contribution or of implied trust.

The property sought to be condemned in this case is by demurrer admittedly held in trust for Hayden. Story's Eq. Jur., 1255, 1256, 1258, and cases cited.

Courts of equity, except as to wills, possess a general and perhaps a universal concurrent jurisdiction with courts of law in cases of fraud, cognizable in the latter, and exclusive jurisdiction in cases of fraud beyond the reach of the courts of law. Story's Eq. Jur., §184, and cases cited.

When debtor has fraudulently transferred property to a third party who is selling it in complicity, a receiver will be appointed, though no judgment has been obtained. 42 Ga., 46.

Injunctions will be granted to restrain vexatious alienation of property pendente lite. Story's Eq. Jur., §908.

In the United States very generally there are statutory provisions by which aid of a court of equity may be had in

favor of a judgment creditor (and sometimes even before judgment) to secure or apply assets which cannot be reached by ordinary legal process. The jurisdiction seems to exist also independently of statute. Story's Eq. Jur., §829, note 5 ; 49 Miss., 565 ; 11 Wall., (U. S.) 610 ; 100 Mass., 396.

The remedy at law must be as adequate and efficient as in equity. 5 Blatchf., 481 ; 31 Ga., 382 ; 37 Mo., 204 ; 17 Ill., 112 ; Story's Eq. Jur., §33 ; 6 Fla., 214.

In the case of West vs. Chasten, 12 Fla., 315, this court, after a full review of the leading cases on the equitable rights of sureties vs. principals, in a well considered and very able opinion, say on page 330 : "It seems that when the day of payment arrives, without payment by principal, the equity arises."

This case is cited not only for the principle stated in the above extract, but also for other important principles therein ruled and applicable to the case at bar.

*B. H. Thrasher*, in *pro per.* for Appellees.

There is a debt due from B. H. Thrasher to complainant by reason of being prior indorser on notes. Can plaintiff subject real estate in equity before procuring judgment at law ?  5 Fla., 9 ; 2 Fla., 92 ; 4 Fla., 349.

B. H. Thrasher cannot stand in light of trustee of Hayden's funds. He stands as if Hayden had loaned him the money upon his promise to pay. For this debt a court of equity will not grant him its powers before judgment at law. The fraud charged is not such an one as equity will take cognizance of before judgment at law.

What connection had E. W. Thrasher, trustee, with the house and lot sought to be subjected in the town of Gainesville?  1 Dan. Chan. Pl. & Pr., New Ed., 335 ; Old Ed., 386.

What connection has Dickinson or B. H. Thrasher with

the fifty acres of land sought to be subjected, and which belonged to E. W. Thrasher, trustee? The plaintiff's bill seeks relief in respect of matters which are in their nature separate and distinct. 13 Fla., 189; Story's Eq. Pl., §530, 4th Ed.

Complainant seeks to subject separate and distinct pieces of property owned by different defendants when there is no community of interest between them, when they cannot properly be joined in the same action. The object of the suit is double. 13 Fla., 189; Bouv. Law Dic., Multifariousness.

The defendant, E. W. Thrasher, as trustee, is brought as defendant upon a record, with a large portion of which, and of the case made by which, he has no connection whatever.

Instance, house and lot in Gainesville. Dan. Chan. Pl. & Pr., New Ed., 335; Old Ed., 386, and note 2.

The defendant, W. A. Dickenson, is brought as defendant upon a record, with a large portion of which, and of the case made by which, he has no connection whatever. Instance, the fifty acres of land alleged to have been bought by E. W. Thrasher, trustee, &c. Same authority as above.

If the court should conclude in this case that equity has jurisdiction, appellees insist that the court below had no right to issue the injunction prayed for in the bill, for the reason that no bond was given by complainant as the law prescribes, nor was any affidavit of inability to give bond filed. See McClellan's Digest, page 158, sec. 19, and 16 Fla., 773.

THE CHIEF-JUSTICE delivered the opinion of the court.

It is a well established rule that where one of several sureties pays a debt for which all the sureties are liable, the

party so paying may compel contribution from the other sureties *pro rata,* and this he may do at law or in equity. It is further established that in equity he may compel the *solvent* sureties to contribute *pro rata* according to the number of such solvent sureties. See Story's Eq. Jur., §§494, 497, and notes.

From the nature of the transaction by which the liability was created there may arise an exemption of one of the sureties from becoming liable to make contribution, as where one surety becomes so at the express solicitation of another who has paid the debt. Ib., §498.

Parker, C. J., in Taylor vs. Savage, 12 Mass., 102, says that it would be competent to a defendant even in an action of assumpsit, which is founded on principles of equity, when called upon to contribute, to show that the plaintiff, although apparently a surety, was in fact the real debtor, and that he would thus successfully resist the claim. " It is settled that when a surety joins in the bond *at the request of him who sues for contribution,* he shall not be held to pay." The Supreme Court of New Hampshire, in Cutter vs. Emely, 37 N. H., 567, 575, also say : " If two persons sign the same obligation as sureties for a third, one of them at the request of the principal and the other at the request of the first surety, they are not co-sureties as between themselves, but the first surety stands in the relation of principal to the second, is responsible to him for whatever he may be compelled to pay, and has, in no event, any claim against him for contribution." A formidable array of authorities is there cited sustaining this position, from Mass., N. Y., N. J., N. Car., Ky., Md., and from text-books.

When one of two sureties becomes such at the request of his co-surety, and upon his promise that he would be put to no loss, he may recover the whole of what he may have been compelled to pay of his co-surety, and such promise may be shown by parol. Apgar vs. Hiler, 4 Zabriskie, 812.

In the case at bar the bill shows that complainant became an indorser of the notes upon which the liability arises at the express request and solicitation of B. H. Thrasher, and upon his representation that the maker, W. L. Thrsaher, B. H. Thrasher and A. M. Thrasher (brothers), indorsers, were perfectly solvent and would indemnify him, and for that purpose gave him a mortgage upon property represented by B. H. Thrasher to be unincumbered. He thereupon became their security by indorsing with them the notes for the amount of $14,500. It turned out that the property so mortgaged was incumbered to a large amount, and was sold under executions against the Thrashers, and the security was therefore worthless.

With these notes, and upon the responsibility of Hayden, the money was obtained, and the Thrashers, who made and indorsed the notes, together with E. W. Thrasher, their father, came to Florida and invested it in the real estate and securities mentioned in the bill. The entire transaction on the part of the Thrashers is charged to have been fraudulent, and that there was a conspiracy between them to obtain his indorsement and raise the money on the notes, and invest it covertly to their advantage without paying the notes; and that they were and are insolvent.

The facts thus stated in the bill show, as strongly as language can be made to show, that as to the Thrasher brothers, and especially B. H. Thrasher, who is stated to have been their spokesman, they were the principals in relation to Hayden, and he their surety.

When the notes became due suits were commenced against him, and judgments recovered to the amount of over $6,500, which he was compelled to pay; and suits were pending against him for the recovery of the money due upon the residue of the notes.

He now seeks to compel payment by B. H. Thrasher,

whom he finds in Florida, of the amount he has already. been compelled to pay, and also the other notes.

It is here objected that the bill will not lie because judgment at law has not been recovered against Thrasher. But however this may be in the case of an ordinary creditor's bill, it is not the rule in a case of this character. At law Hayden might recover what he has *paid* on account of those notes. In equity he may file his bill to compel his principal to discharge him from his liability. "Although the surety is not troubled or molested for the debt, yet, at any time after the money becomes payable, the court will decree the principal to discharge it." 2 Leading Cases in Equity, p. 1896, Fourth Ed., 1877, citing 1 Vern., 188 ; 3 Merivale, 579 ; Mosely, 318.

After the satisfactory examination of the question by this court in West vs. Chasten, 12 Fla., 315, 328 to 331, we cannot consider the matter open to discussion upon the facts stated in this bill. The complainant has a standing here which not only entitles him to re-imbursement for the money he has already paid for the Thrashers as their surety, but he has a right to be protected against the notes unpaid. For this purpose such a surety may, when necessary, have the aid of the equity powers and process of the court to reach any funds, securities or property available to that end, which, in law or in equity, should be so subjected, and in whosesoever hands the same may be found. From the statements in the bill the complainant is warranted in asking the aid of the court and the exercise of such power as may be appropriate to reach any such assets and make them available.

The first and fourth grounds of demurrer are that the bill is prolix and multifarious. We do not think it liable to such objection. Though it includes and charges several persons and transactions, its entire scope and purpose is,

like a creditor's bill, to reach certain property which, it is alleged, should be applied to relieve the complainant, and which, it is alleged, has been fraudulently placed beyond the reach of the ordinary process of the law. A bill is not multifarious where one general right is claimed by the plaintiff, although the defendants may have separate and distinct rights. 20 Pick., 368 ; 4 Allen, 341 ; 29 Mo., 350 ; 1 Ired., 389 ; and numerous cases cited in Dan. Ch. Pl. and Pr., 3 Am. Ed., 345.

The second and third grounds of demurrer are that there is no equity in the bill, and that the plaintiff has not recovered judgment at law against B. H. Thrasher and other indorsers of the notes. These grounds have been already disposed of by the consideration of the whole case made by the bill.

As to the security to be exacted upon the issuing or continuance of an injunction, except to stay proceedings at law, neither the statute nor the rules prescribe the amount or the conditions. These are left to the sound discretion of the court.

The conclusion is that the decree of the Chancellor dismissing the bill must be reversed and the injunction re-instated, and the cause is remanded with directions that such further proceedings be had as may be agreeable to equity and the practice of the court.