JULIUS A. HAYDEN, APPELLANT, VS. L. A. THRASHER, ADMINISTRATRIX, ET AL., APPELLEES.

1. One who has become surety at the request of co-sureties and upon assurances made by them at the time that he would be saved harmless and would not have the debt to pay, may proceed in equity without first resorting to a court of law to compel said co-sureties to discharge whatever sum he has become bound to pay on account of said suretyship.

A surety who has been induced to endorse notes for the benefit of co-sureties by fraudulent representations made by them to obtain said endorsement, and who has been compelled to pay the notes so endorsed, can in equity, without first resorting to a court of law, subject to the payment of his said demand real estate purchased by said co-sureties with the money obtained on the notes so endorsed, or with their own money in their names as trustees for the benefit of their wives and children.

3. A surety who has been induced to endorse notes by fraud practiced by a co-surety, and who has been compelled to pay the notes, cannot subject to the payment of this demand real estate purchased by said co-surety in his name as trustee for the benefit of his wife and children with his own money, prior to said endorsement, without showing that said purchase was made with a view to defraud said surety or some existing creditor.

4. Where a bill in equity has been filed in the county in which real estate is situate to subject it to a demand mentioned in the bill, and an injunction restraining the defendants from alienating said real estate has been served, as to said real estate a *lis pendens* is established, and a purchaser of said property from said defendants, or defendant, takes the same subject to all the rights which complainant in said bill may establish against said defendants.

5. D. purchased real estate from T. for five thousand dollars, and as part payment receipted T. for eleven hundred and eighty-nine dollars and twenty-seven cents for an account held against him and executed two notes for the balance. Before the notes were paid D. learned that H. had instituted proceedings to subject said real estate to the payment of a demand against T., and upon advice of counsel D. procured T. to convey in lieu of said real estate other land not subject to H.'s demand, and at the same time, at the instance of T., agreed to convey said real estate to the administrator of the estate of T.'s father upon the favorable termination of the suit of H. against T.: *Held*, that D. was not an innocent purchaser for value without notice of said real estate.

Appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion.

*Andrew Johnson* for Appellant.

*Ashby & Trasher*, *Hampton & Hampton*, *Robt. W. Davis* for Appellees.

(Judge Barnes, of the First Circuit, sat in the place of Mr. Justice Taylor, who was disqualified.)

MABRY, J.:

This is the third time this case has been before this court on appeal. A demurrer to the original bill of complaint was sustained by the chancellor, and on appeal, 18 Fla., 795, this decree was reversed, and the cause was remanded with directions that such further

proceedings be had as may be agreeable to equity and the practice of the court. E. W. Thrasher, one of the defendants, died after the decree of the chancellor sustaining the demurrer to the bill, and before the submission of this cause reported in 18 Fla., 795, and upon proper notice the cause was, as to said Thrasher, revived against his administrator, W. M. Knox.

After the decision of this court reversing the decree sustaining said demurrer, and upon the return of the mandate to the Circuit Court of Marion county, where this cause originated, the defendants filed separate answers to the bill. On account of the disqualification of Hon. Thomas F. King, who succeeded Hon. James B. Dawkins, as Judge of the Fifth Judicial Circuit, this cause was transferred to the Seventh Judicial Circuit. On motion of defendants, after answers filed, the injunction which had been granted against defendants B. H. and E. W. Thrasher, W. A. Dickenson and G. W. Means, forbidding the transfer of certain property mentioned in the bill, was dissolved. The decree of the chancellor dissolving said injunction was, on appeal to this court, 20 Fla., 715, reversed, and the injunction reinstated with directions that it continue until the final hearing of the cause. A full and sufficient statement of the case as made by the pleadings up to the time of the dissolution of the injunction will be found in 20 Fla., 715.

After the reversal of the decree dissolving the injunction defendant Dickenson by leave of the court amended his answer. Upon final hearing of this cause on the

bill, answers and testimony the chancellor by final decree dismissed the bill, from which decree complainant appeals to this court.

As will be seen by the former reports of this case, the essential allegations of the bill, briefly stated, are, that complainant and B. H. Thrasher and A. M. Thrasher endorsed six notes aggregating $14,500, signed by W. L. Thrasher, payable to his own order and also endorsed by him; that the Thrashers are brothers and sons of defendant E. W. Thrasher, and complainant endorsed said notes at the request of defendant B. H. Thrasher, with his assurance that complainant would be protected against the payment of the same. Further that the endorsement of complainant on said notes was procured by fraud and misrepresentations on the part of defendant B. H. Thrasher in pursuance of a fraudulent combination on the part of all the Thrashers, father and sons, to obtain the money of complainant; that the Thrashers obtained the money on said notes and divided it among themselves, and that the defendants E. W. Thrasher and B. H. Thrasher invested portions of the money so fraudulently obtained in certain real estate described in the bill situated in Marion and Alachua counties, and that said defendants, in order to defraud complainant, had deeds to said property executed to them as trustees for their respective wives and children. It is further alleged that the defendant W. A. Dickenson, confederating and conspiring with defendant B. H. Thrasher to

defraud complainant, has pretended to buy a portion of the property so purchased by said B. H. Thrasher, but that the sale to the said Dickenson was fraudulent and with full knowledge of the fraudulent character of the purchase by Trasher.

The answer of B. H. Thrasher denies every material allegation of the bill as to him except the purchase of the land in his name as trustee for his wife and children, and he denies that this was done to defraud complainant. It is admitted, however, in his answer that two of the said notes endorsed by complainant amounting to $4,500 or $5,000, were used by him in purchasing the five-acre grove mentioned in the bill, but it is claimed that these notes were borrowed from E. W. Thrasher; to whom they had been assigned. Thrasher says that he had ample trust funds in his hands to buy the Cannon lot in Gainesville and build the house thereon, but he does not state from what source these funds were derived.

The original answer of defendant, W. A. Dickenson, states that on the 3rd of January, 1879, and before the filing of the bill of complaint in this case, he purchased the five-acre grove mentioned in the bill, and known as the "Means homestead," from B. H. Thrasher, trustee, and that his purchase was made in good faith for valuable consideration and without any notice whatever of any rights, legal or equitable, of the complainant in or to the said land. As to the Cannon lot and house in

Gainesville, Dickenson says in his original answer that he advanced $650 and purchased the lot for B. H. Thrasher, as trustee, and took the deed in his name as security, and that he advanced money to build the house in Gainesville, and took security for the same. He alleges that he purchased the lot, and perfected an arrangement whereby he was secured in the advancement for building the house before he purchased the five-acre grove, and that the latter purchase had no connection with the house and lot transaction, but he does not state in his answer how he was secured, further than by taking the deed to the lot in his own name. In the amendment to his answer, filed by leave of the court, the defendant, Dickenson, says that, becoming dissatisfied with his purchase of the five-acre grove, on account of a mortgage on it held by the estate of E. W. Thrasher, he procured B. H. Thrasher to convey to him in lieu of said five-acre grove, a half interest in eighty-four acres of land; that the eighty-four acres, an undivided half of which B. H. Thrasher, as trustee, conveyed to him, is the land described in the bill of complaint, and which B. H Thrasher, as trustee, purchased from S. C. Means. This exchange is alleged to have been consummated on the 15th day of June, 1880, by deed from B. H. Thrasher, trustee, to Dickenson, conveying an undivided half interest in said eighty-four acres, and at the instance of B. H. Thrasher, Dickenson executed and delivered to W. M. Knox an instrument in writing

agreeing to convey to said Knox the said five acres originally purchased by Dickenson, when this suit shall be terminated in favor of Dickenson. Defendant Dickenson further says in the amendment to his answer, that in consideration of the agreement to convey to Knox, he procured the estate of E. W. Thrasher, deceased, to deliver up certain notes which the late E. W. Thrasher held against him, Dickenson. The amended answer further states that Dickenson, in all his transactions relative to the Thrasher property, acted in good faith, paid a good and valuable consideration for the same, and that he believes the eighty-four acres in which he has a half interest was bought by said B. H. Thrasher with trust funds, and that the exchange for it was made by defendant Dickenson after thorough consultation with counsel, who advised him to make it.

W. M. Knox, as administrator of E. W. Thrasher, deceased, answers and denies all fraud or combination on the part of his intestate with his sons to defraud and wrong complainant in procuring the endorsement of said notes by him. The answer admits that E. W. Thrasher received two of the Hayden notes, and loaned them to his son, B. H. Thrasher, but it is denied that he fraudulently received said notes or collusively loaned them to his said son. The answer alleges that E. W. Thrasher, deceased, received said notes from his sons in due course of trade for a valuable consideration; and that he loaned them to his son, B. H. Thrasher, in good faith. Knox denies that E. W. Thrasher invested any of the proceeds of said notes in property in Flor-

ida, and avers that he purchased the property mentioned in the bill of complaint with trust funds entirely.

The answer of G. W. Means admits that he sold to B. H. Thrasher an undivided half interest in one hundred and ten acres of land, including the five acres of orange grove mentioned in the bill of complaint, for the sum of $5,000, and that most of this sum was paid by B. H. Thrasher out of the proceeds of notes endorsed by complainant; that the $800 paid by E. W. Thrasher for the fifty acres mentioned in the bill of complaint was in currency. The answer further states that Means agreed to refund, if desired, the $5,000 and interest, purchase money for the five acres, at the expiration of three years, but Means insists that he is under no obligation now to refund the money, because the property has become encumbered by this litigation, and has also been suffered to go to waste and to deteriorate in value.

We are now called upon to review the decree of the Chancellor in dismissing the bill at the final hearing on bills, answers and proofs. The sufficiency of complainant's bill, and his right to pursue his remedy in equity without first suing at law have been sustained and adjudicated in 18 Fla., 795, and this decision has become the law of this case, so far as the case made in the bill is concerned. If complainant has sustained his bill by proofs he is entitled to a decree to the extent of this proof, and if he has failed in this respect the decree of the Chancellor dismissing the bill should

be sustained.    We will not set out the evidence in full in this opinion, but will give our conclusions, based upon a careful consideration of it.    It is unquestionably true that complainant Hayden endorsed six notes about June 2d, 1875, aggregating $14,500, signed by W. L. Thrasher, payable to his own order, and also endorsed by W. L., B. H. and A. M. Thrasher, and that Hayden subsequently was forced to pay all of said notes amounting, principal, interest and costs, to near $20,000.    It is also certain, we think, from the evidence that complainant endorsed said notes at the instance and request of B. H. and A. M. Thrasher, with assurances made at the time that they would protect him against the payment of the same.    A. M. Thrasher explains the object of securing Hayden's endorsement on the notes, and the manner in which it was done. He says that a judgment had been rendered in May, 1875, in the State of Georgia, against his father, E. W. Thrasher, for $10,000, and that he and his brothers, B. H. and W. L. Thrasher, had signed as sureties on a stay of this judgment, and before the time of the stay was out, the arrangement to procure Hayden's endorsement on the notes was put on foot to defeat a recovery under this judgment.    The plan was to borrow the money from Hayden and have W. L. Thrasher to convey to him certain property as security for the debt, and the property would thereby become secure against the judgment which they desired to defeat.    A. M. Thrasher was doubtful about the lien of the judgment under the stay bond upon the property which they

proposed to convey to Hayden, but B. H. Thrasher asserted that the property of a surety on a stay bond was not bound by the lien of the judgment stayed, and assured his brother that he had consulted eminent lawyers in Atlanta who agreed with him. In pursuance of this plan, which was devised by B. H. Thrasher, Hayden was urged to endorse the notes. He was requested first by A. M. Thrasher, who was his son-in-law, and then by B. H. Thrasher, to endorse the notes. The testimony of both A. M. and W. L. Thrasher shows that Hayden hesitated about endorsing the notes, and A. M. Thrasher says that both he and B. H. Thrasher assured him that he would never have the notes to pay, and in addition to their promises had W. L. Thrasher convey to Hayden property estimated in value at $30,000, as security to protect him against his endorsements. B. H. and A. M. Thrasher were attorneys and partners at law, and they represented to Hayden that the property conveyed to him was unencumbered and the title to it good. It is shown by the testimony that the Supreme Court of Georgia held this property conveyed to Hayden subject to the lien of the judgment against E. W. Thrasher from the time of signing the stay bond, and the entire property was sold under this judgment, and was a total loss to Hayden. The testimony shows that he has received only about $250 on some notes transferred to him at the time of the endorsement of the notes in question. The allegations in the bill that complainant endorsed the notes therein mentioned at the request of his co-endorser, B. H.

Thrasher, who agreed to protect and save him harmless against the payment of the same, and that complainant has paid said notes is fully sustained, we think, by the proof. It is clear, we think, from the evidence that the procurement of Hayden's endorsement on said notes originated from a desire and purpose to defeat the judgment against E. W. Thrasher. A. M. Thrasher expressly states that he and his brother B. H. Thrasher thought that their father ought not to pay the judgment, because it was rendered for an old claim for slave property, and that they resolved that he should not pay it if they could help it. He says after the judgment against their father was stayed, he and his brothers consulted about how to defeat the judgment, and the plan finally adopted was to convey the property to Hayden as security for money which they could raise on his endorsement. A. M. Thrasher says "our intention was to save the property from the lien that would accrue after the expiration of the stay, and by which this amount of property would be saved from the judgment and would accrue to the benefit of the family." W. L. Thrasher says "Hayden's endorsement was procured on account of the execution and stay bond, and we thought we could fight the execution and stay bond better through Hayden than by ourselves." At the time Hayden endorsed the notes he was assured that he would not have them to pay, yet we are forced to the conclusion from the testimony that his co-endorsers never expected to pay the notes, but intended that Hayden should take them up and look

to the property conveyed to him for his pay.   Further-more, knowing that Hayden was relying upon their statements, A. M. and B. H. Thrasher represented that the property conveyed to him was unencumbered and the title to it good.   We are not unmindful of the fact, upon which respondents lay much stress, that com-plainant says in his testimony he "does not think there was an intention on the part of the defendants to defraud him, but that their intention was, in his opin-ion, to shift the title of the property into him, and throw the burden on him to protect it, in order to get rid of the effect of the execution that issued on the stay bond."   It is also true that the intention of the parties was concealed from Hayden, and the facts about the stay bond were not disclosed to him.   Not only were these facts not disclosed, but it was repre-sented to him that the property was unencumbered and the security good.   It is no answer to say that the Thrashers believed the property at the time was not subject to the lien of the judgment.   If this be ac-cepted as true it would not relieve this transaction as being fraudulent in law as to Hayden.   The subsequent conduct of B. H. Thrasher tends to throw light upon his intentions and acts at the time Hayden endorsed the notes.   A. M. Thrasher says that he told his brother, B. H. Thrasher, he wanted to consult with certain lawyers in Atlanta in reference to the lien of the stay bond before he would agree to the plan of having Hayden endorse the notes and take the prop-erty as security, and in a short time thereafter he says

his brother informed him that he had consulted with the attorneys named, and they agreed with him that the property was not subject to the lien.   A. M. Thrasher testifies that his brother subsequently acknowledged that he had deceived him in this respect, and had consulted with only one of the attorneys named.   It is also shown by A. M. Thrasher that certain notes were transferred to Hayden as security along with the mortgage of the property, and it was agreed that these notes should be collected under the directions of the firm of Thrasher & Thrasher, and the proceeds turned over to Hayden.   He says between $400 and $1,000 were collected on these notes and B. H. Thrasher received the money and never accounted to Hayden for any of it. Looking at the transaction of Hayden's endorsement of the notes, in the light of all the circumstances as shown by the testimony, we are unable to sanction it as proper, but are forced to conclude that it was unfair, inequitable and fraudulent.

The next enquiry is as to the right of complainant to subject the property mentioned in the bill to the satisfaction of his demand.   On the part of respondents it is insisted that the house and lot in Gainesville, known as the "Cannon lot," and an undivided half interest in one hundred and five acres of land purchased from S. C. Means belonging to Mrs. L. A. Thrasher and her children, and that the defendants, Dickenson and Knox, are innocent *bona fide* purchasers of the other portions of the property.   S. C. Means conveyed to B. H. Thrasher, as trustee for his wife and children, on the

21st day of July, 1875, an undivided half interest in the following real estate situated in Marion county, Florida : commencing at the northwest corner of section five, township twelve, range twenty-one, and running thence east along the section line thirty-three chains and seventeen links, thence south thirty-three chains and seventeen links, thence west thirty-three chains and seventeen links to the western boundary line of said section, and thence north along said section line thirty-three chains and seventeen links to the point of beginning, containing one hundred and ten acres, for the consideration of $5,000, as expressed in the deed. On the 11th day of January, 1876, G. W. Means, as trustee, conveyed to B. H. Trasher, as trustee aforesaid, the other undivided half interest in said one hundred and ten acres for the sum of $5,000, as expressed in the deed. At the time of the purchase from S. C. Means it was understood between Thrasher and G. W. Means that the former's part of the purchase was one hundred and five acres, and the latter's interest would be five acres of grove and a house situated thereon known as the "Means homestead." When G. W. Means conveyed the remaining interest in said land to Thrasher, as trustee, it was understood between them that it was the the five-acre grove and house.

It is alleged in the bill that B. H. Thrasher purchased the above mentioned property with money fraudulently obtained from complainant, or with his own money, and had the deeds made to him as trustee for his wife

and children, for the purpose of defrauding complainant in the collection of his demand.

As to the half interest purchased from S. C. Means, we think the testimony shows that sixteen hundred and forty-seven dollars and fifty-six cents of the purchase money was derived from a sale of sixteen acres of it to A. G. Hester, and from rental and sale of certain real estate situated in Atlanta, Ga., held by B. H. Thrasher, trustee for his wife and children. The amount derived from the sale to Hester was one thousand dollars, and the amount arising from the Atlanta property was six hundred and forty-seven dollars and fifty-six cents. A. M. Thrasher testifies that this Atlanta property was purchased with money of his brother B. H. Thrasher, and deeds taken in his name as trusteee for his wife and children. It appears, however, from the evidence that this property was purchased before Hayden endorsed the notes mentioned in the bill, and there is nothing to show that the purchase was made in view of the Hayden debt, or to defraud any other existing creditor. The conveyance, therefore, in trust for the benefit of the wife and children must be regarded as establishing a trust estate for their benefit. Wait on Fraudulent Conveyances and Creditor's bills, sec. 100; Matthai, Ingram & Co. vs. Heather, 57 Md., 483; Curtis vs. Fox, 47 N. Y., 299; Toney vs. McGehee, 38 Ark., 419: Claflin vs. Mess., 30 N. J. (Eq.), 211.

It is clear, then, that $1,647.56 of the purchase money of this purchase was not derived from funds obtained from Hayden or the individual means of B. H. Thrasher, and we are not satisfied from the evidence that the balance due on this purchase was in fact ever paid for by B. H. Thrasher; or if paid for at all, which is not shown, was paid for out of money from such sources. When the two notes used in paying for the G. W. Means' half were used for that purpose, all the other notes had passed from the Thrashers, and in addition to the failure to prove that B. H. Thrasher ever paid or caused to be paid any of the balance of the purchase money of the S. C. Means half over and above the $1,-647.56, it is shown that there was property on White-hall street, in Atlanta, held by Thrasher in trust, out of which, if we are to resort to presumptions, it may be presumed that payment might have been made. Our conclusion, after a consideration of all the evidence on this point, is, that complainant has failed to establish his right to subject to the payment of his demand the real estate purchased from S. C. Means.

It is admitted by B. H. Thrasher in his answer, and established by the evidence, that two notes, or the money obtained on two notes, endorsed by complainant as aforesaid, amounting to $4,500, were used by said Thrasher in purchasing the other interest in said land from G. W. Means. It is contended, however, that these two notes had been transferred in due course of business to E. W. Thrasher, who loaned them to B. H. Thrasher. Respondents contend that these notes were

transferred to E. W. Thrasher in payment of a debt of $10,000 due him by his said sons, and they insist that in consequence of this transfer complainant lost his right, if he ever had any, to pursue the funds arising from them. If we were to concede that E. W. Thrasher received these notes from his sons in payment of a debt due him, without any knowledge of the fraudulent manner in which they had been obtained from Hayden, and then loaned them to B. H. Thrasher who purchased the property in question with them in his name as trustee for his wife and children, it does not follow from this that complainant could not subject the property to the payment of his demand against B. H. Thrasher. It is not pretended that the notes were ever the property of Mrs. L. A. Thrasher and her children, or that they represented funds arising from the sale of their property. It is not contended, nor is there any foundation in the evidence for such contention if made, that the loan of the notes was made to Mrs. Thrasher and her children. The evidence rebuts the idea that these notes were trust funds of Mrs. L. A. Thrasher and her children, in the hands of her husband. It is certain that $4,500 of the money used in purchasing the property in question was derived from notes endorsed by Hayden, and the transfer of these notes to E. W. Thrasher, and the re-delivery of them to B. H. Thrasher do not, in our opinion, prevent complainant from reaching the property purchased with them. E. W. Thrasher, it is true, was not a party as maker or endorser on the notes obtained from Hayden;

but he was the party against whom the judgment for $10,000 has been rendered, and which had been stayed by his sons becoming parties to it as sureties. These sons, according to their own testimony were contriving to defeat this judgment, and the plan adopted by them, after mature deliberation, was, under the pretense of obtaining an accommodation endorsement from Hayden, to cover up in his name, and without his knowledge, the legal title to real property held by W. L. Thrasher, one of the parties to the stay of said judgment. As appears in what has already been said, their intention, as expressed by A. M. Thrasher, was to save this much property for the use of the family; and W. L. Thrasher says "we could fight the judgment better through Hayden than by ourselves." After obtaining Hayden's endorsement on the notes, six thousand dollars in money received on them, and two of said notes amounting to $4,500 were turned over to E. W. Thrasher in payment, as it is alleged of $10,000 due him from his sons A. M. and B. H. Thrasher. Mrs. Martha Thrasher, widow of E. W. Thrasher, produces a statement of settlement which she says is in the handwriting of A. M. Thrasher, showing the payment to her husband of said money and notes. At the time that this money and notes were turned over to E. W. Thrasher, his sons A. M. and B. H. Thrasher had obligated themselves as parties to the stay proceedings to pay $10,000 for their father. If they had paid the

judgment against E. W. Thrasher, for the payment of which they had become bound as sureties, it would have been a discharge of their debt to him. But their expressed object was to defeat the collection of this judgment, and instead of protecting Hayden, as they had promised to do, turned over $10,000 fraudulently obtained from him to their father, E. W. Thrasher. A very short time after this, as shown by the testimony, B. H. and E. W. Thrasher came to Florida and made the purchases alleged in the bill of complaint. To pay for the five-acre grove B. H. Thrasher got from his father the two notes which had been turned over to him. A. M. Thrasher explains the circumstances under which these notes were obtained. He says after these notes were given him (E. W. Thrasher), and after he began to discover what would be the probable result of these suits (against Hayden), and that Hayden's security would likely fail, he insisted on returning these notes to Hayden, and B. H. Thrasher would not consent to it, and assured him that Hayden should lose nothing, and that it was absolutely necessary for him to use the notes in perfecting some trade that he had made in Alachua county, and finally E. W. Thrasher yielded to his importunities and consented for him to use the notes, with the verbal promise that under no circumstances should Hayden be called upon to pay them. When E. W. Thrasher realized that Hayden's security would fail, he wanted to return the notes. He was a party to the judgment sought to be defeated, and his sons were acting for him in accomplishing this

object. To hold that E. W. Thrasher was disconnected with this transaction, and received said notes in due course of business without knowledge of how they were obtained, would, in our opinion, do violence to every reasonable inference from the circumstances of the case. On the contrary the plainest principles of equity and justice require that all property purchased either by B. H. Thrasher or E. W. Thrasher, as trustees or otherwise, with money which they obtained from the notes endorsed by Hayden, as shown by this record, should be subject to this demand.

At the time B. H. Thrasher purchased the five-acre grove he executed a mortgage on it to E. W. Thrasher, trustee for his wife and children, to secure the sum of $5,000, but it is clear that this mortgoge was given to secure the amount of the two notes claimed to have been borrowed, and which were used in buying the property. It is contended, however, that these notes were turned over to Mrs. Martha A. Thrasher, widow of E. W. Thrasher, and became her property. She testifies that two notes were turned over to her, but she does not explain for what purpose they were turned over to her. She also testifies that property in Atlanta was held in trust for her, but she does not seem to know anything about this trust property further than what is shown by a deed on record in Fulton county, Georgia. She thinks this property was sold, but does not know what became of the funds. Her testimony is entirely too indefinite and uncertain to establish a trust character of the funds secured by the mortgage on the five-acre grove; on the

contrary, the testimony is clear that the money with which this purchase was made and the sum attempted to be secured by this mortgage, came from Hayden, and the mortgage from B. H. Thrasher, as trustee, to E. W. Thrasher, as trustee, is a strong circumstance going to sustain the charge that it was an attempt on their part to put their property beyond the reach of Hayden.

Defendant W. A. Dickenson sets up a claim to an undivided half interest in eighty-four acres of the land described in the bill and alleged to have been purchased by B. H. Thrasher, as trustee, with money fraudulently obtained from complainant. The land in which he now claims said interest is a part of the one hundred and five acres purchased by Thrasher from S. C. Means, and we have decided that complainant has failed to established his right to subject this purchase to pay his demand. Dickenson obtained a deed to this land on the 15th day of June, 1880, pending this suit, and after he and Thrasher had been served with an injunction commanding them not to alienate the property in question. It appears from the testimony that Dickenson purchased from B. H. Thrasher, trustee, the five-acre grove on the 2nd day of January, 1879, before the institution of this suit, but becoming dissatisfied with his purchase on account of the mortgage on the five acres, and learning that money obtained from Hayden had been invested therein, he procured Thrasher to convey to him the interest in the eighty-four acres in lieu of the five-acre purchase. His interest in the eighty-four acres was obtained by an

exchange therefor pending this suit, of the five acres already purchased. All the interest which Dickenson acquired in the eighty-four acres was subject to whatever rights complainant had to subject the same to the payment of his demand against Thrasher, but as we have already held, this property is not subject to complainant's demand, and it follows that Dickenson is claiming as to the eighty-four acres property which cannot be reached in this suit. Any further consideration, therefore, of Dickenson's purchase of an interest in the eighty-four acres becomes unnecessary here. Dickenson says that after he received a deed from B. H. Thrasher, as trustee, for the half interest in the eighty-four acres he entered into an agreement to convey to W. M. Knox, administrator of E. W. Thrasher, the five-acre grove which he had before purchased from Thrasher, when this suit is terminated in his favor. Dickenson has not yet executed any deed to Knox for the five acres, and so far as the record shows, the title is still in him. He testifies that he agreed to convey to Knox, administrator, at the instance and request of B. H. Thrasher, and never had any personal agreement with Knox about it. Knox never paid any money, or promised to pay any, either to Dickenson or B. H. Thrasher for the said five acres. Dickenson says that the consideration for the interest in the eighty-four acres deeded to him by B. H. Thrasher, trustee, was the five-acre grove formerly purchased from Thrasher. Knox swears that he purchased the five-acre grove for $5,600, and executed notes for this amount payable to

Mrs. Martha A. Thrasher and her four children, one of whom is his wife. At the time Knox claims to have purchased the five-acre grove this suit was pending and an injunction had been granted and served on both B. H. Thrasher and W. A. Dickenson, commanding them not to alienate this property. Knox swears that he had no knowledge of such injunction at the time of his purchase. He must be considered, however, as acting with full knowledge of all that is disclosed in complainant's bill. This suit was pending on the chancery side of the Circuit Court of the county in which the five acres are situated, and an injunction had been granted restraining its alienation. The Circuit Court had acquired jurisdiction both as to the parties and the subject-matter of the suit—the land now in question—and as to this property there was a *lis pendens*, and Knox must be regarded in law as purchasing the five acres with knowledge of whatever rights complainant had to subject the same to his demand. 2 Pomeroy's Equity Jurisprudence, secs. 632, 633; Murray vs. Ballou, 1 Johnson's Chy., 566; Allen vs. Poole, 54 Miss., 323; Choudron vs. Magee, 8 Ala., 570; Center vs. P. & M. Bank, 22 Ala., 743; Badger vs. Daniel, 77 N. C., 251; Miller vs. Sherry, 2 Wallace, 237; 1 Story's Equity Jurisprudence, secs. 405, 406; Bennett on Lis Pendens, sec. 18.

It is contended further that Dickenson was an innocent purchaser of the five-acre grove for value without notice of any fraud on the part of Thrasher, and that

Knox can acquire a good title through him to the property. It is sought in behalf of Knox to invoke the rule that a *bona fide* purchaser for value without notice from even a fraudulent grantee acquires a good title. In the case of Neal vs. Gregory, 19 Fla., 356, it is said by this court on this subject, "the rule is that a *bona fide* purchaser for value gets a good title. As against the debtor the fraudulent deed is effectual, and the fraudulent grantee has a title and right to alienate. The only infirmity in his title is its liability to be impeached by creditors. As to all others it is perfect, and when it has passed into the hands of a *bona fide* purchaser for value without notice, even this infirmity is cured and the title becomes sound and indefeasible." Abundant authority could be cited to sustain this rule if necessary. We will consider the purchase of the five-acre grove by Dickenson in view of the claim set up for Knox under it. Knox, as administrator of E. W. Thrasher, files an answer in behalf of his intestate, but interposes no answer in his own right. Dickenson in his original answer claims to be an innocent purchaser of the five-acre grove. According to his testimony he purchased this property on the 2nd day of January, 1879, before complainant filed his bill in this suit. Dickenson testifies that he purchased this property for $5,000, and as a part payment receipted B. H. Thrasher for an account of $1,189.27 which he then held against him as trustee for his wife and children. For the bal-

ance of the purchase money he executed to Thrasher, trustee, two notes.   He does not say when these notes were payable.   The day after he made this purchase he learned that an injunction had been issued restraining Thrasher from alienating this property.   This injunction has been granted in the suit of one Freyer, a different proceeding from this one.   This injunction was dissolved on the day before Dickenson made this purchase.   Complainant filed his bill on the 24th day of January, 1879, and soon thereafter Dickenson says he learned of it and consulted attorneys about his rights and was advised to get Thrasher to convey him other property in lieu of the five acres.   Dickenson says that after he had made the five-acre purchase he discovered that E. W. Thrasher held a mortgage on it and he refused to properly cancel it.   Becoming dissatisfied with his purchase on the account of the mortgage; and learning that one of the Hayden notes had been used in the purchase of the five-acre grove, Dickenson, as he says, procured Thrasher to exchange, in lieu thereof, the half interest in the eighty-four acres. It does not appear that Dickenson had made any payment for the five-acre grove, except the account, before the complainant filed his bill or before Dickenson was informed that the Hayden note had been used in paying for the same.   According to Dickenson's statement, all the purchase money had not been paid at the time of the exchange, which was on the 15th day of

June, 1880. Without holding that Dickenson had knowledge of the fraudulent character of the purchases in question made by B. H. Thrasher before he bought the five-acre grove, it is clear that he became aquainted with the allegations of complainant's bill before paying all the purchase money, and that before doing this he exchanged the five acres for a half interest in the eighty-four acres. Dickenson was protected, as he explains, in the five-acre purchase by taking from B. H. Thrasher, truetee, the eighty-four acres. According to Dickenson's own statement he did not sell to Knox and had no personal agreement with him about the five acres. At the instance of Thrasher the bond for title was executed to convey this land to Knox, administrator of E. W. Thrasher, deceased, at the termination of the suit. Dickenson cannot in our judgment be held an innocent purchaser of the five-acre grove as against complainant, and Knox can acquire no rights to this property by purchase pending the suit.

Complainant alleges in his bill that a certain fifty-acre tract of land described in the bill was purchased by E. W. Thrasher, either in his own right, or as trustee for his wife and children, with the notes or with the proceeds of the notes fraudulently obtained from him, and asks that the same be subjected to the payment of his demand. Knox, as administrator of E. W. Thrasher, deceased, denies that his intestate, either as an individual or a trustee, used the notes or the proceeds thereof to purchase the land described in the bill, or that he used any of the proceeds of said notes

188        SUPREME COURT.

J. A. Hayden v. L. A. Thrasher, Adm'x. et al.—Opinion of Court.

in improving said property, but on the contrary, defendant alleges that said E. W. Thrasher, as trustee, bought said land and improved the same wholly and entirely with funds he held as trustee.   There is no explanation of where these trust funds came from, or for whom they were held.   A. M. Thrasher, son of E. W. Thrasher, testifies that the sale of the property under execution on the judgment stayed, reduced to insolvency E. W. Thrasher, as well as the other parties on the stay bond, and that when his father came to Florida he had but little money, except what he had received on account of the Hayden notes.   (He further says that when E. W. Thrasher married his late wife, now his widow, in 1854 or 1855, she was worth about $13,000 in slave property, and that his father sold some of this property for $2,000, which he considered as hers.   There was no deed of trust, or property purchased for her until they came to Florida, when he was informed that there was an amount invested for her benefit in my father's name as trustee.)   W. L. Thrasher was asked by counsel for complainant if he knew or had been informed of any investments made in Florida with funds arising from the notes procured from Hayden and he declined to answer as to investments upon information.   He stated that he did not know of his own knowledge about such investments. On cross-examination he stated that "I think my father told me that some of the money paid to my step-mother was invested in Florida."   W. L. Thrasher testified that $6,000 obtained on the notes endorsed by

Hayden was delivered by him at the request of B. H. Thrasher and A. M. Thrasher to his step-mother. A. M. Thrasher says that they paid the money to their father in satisfaction of a debt. G. W. Means says that E. W. Thrasher paid him $800 in currency for the fifty acres. Mrs. Martha A. Thrasher testifies that trust funds were invested in lands in Marion county purchased from Means, and held by her husband as trustee for herself and children. She says that she knows that trust funds were invested for her because she says that she had the money and notes in her hands. When questioned about the trust funds she cannot tell anything about any trust funds, except what is expressed in a deed conveying some land in Atlanta, Ga., to B. H. and A. M. Thrasher, trustees for her. What became of this trust property she cannot tell, or who received it she does not know. We entertain very little doubt but that the fifty acres described in the bill of complaint as purchased by E. W. Thrasher, trustee for his wife and children, was paid for out of the $6,000 received on the Hayden notes and turned over to him by his sons. We are unable to conclude that trust money of Mrs. M. A. Thrasher and children purchased this property, but believe the testimony shows the money obtained from Hayden secured it.

We think the complainant has failed to sustain his bill as to the house and lot in Gainesville, Florida. Very little testimony was introduced in reference to this property. Dickenson is the only witness who

says anything about it, and from his statements in reference to it, the allegations in complainant's bill are not sustained.

An examination of the record shows that after the decree of the chancellor dissolving the injunction was reversed, complainant, by leave of the court, amended his bill by making Annie Lee Thrasher, John E. Thrasher, M. A. Thrasher and Fannie Bridges, parties defendant. Annie Lee Thrasher is a minor, and a guardian *ad litem* was appointed for her, but the record does not show any service on the minor. An appearance is filed for all parties made defendant, but no answers were filed for them. The record does not show and we are unable to say for what purpose they were made parties, but we deem it proper to call attention to the state of the pleadings in this respect.

Our conclusion is that the complainant has sustained his bill as to the five-acre grove, known as the "Means homestead," and the fifty acres purchased by E. W. Thrasher, trustee, and has failed as to the other property described in the bill.

The decree appealed from must be reversed, and the cause will be remanded for further proceedings not inconsistent with this opinion.